## 28845.  NICHOLS v. STATE OF GEORGIA.

DECIDED JULY 16, 1941.  REHEARING DENIED JULY 30, 1941.

*Wood & Spence, T. H. Crawford,* for plaintiff in error.

*H. G. Vandiviere, solicitor-general,* contra.

STEPHENS, P. J.   At the August term, 1940, of Fannin superior court the grand jury initiated an investigation of the office of the

ordinary of the county in the handling of traffic cases, and appointed a committee to continue the investigation. This committee, on September 20, made a report to the judge of the superior court, on which the judge based an order requiring J. M. Nichols, the ordinary, to turn over to the committee two dockets and certain papers. The judge ordered the report filed and that Nichols be served with a copy of the report and the order. On October 12, 1940, the committee presented a petition to the judge alleging that the ordinary had refused to produce one of the dockets which he had been ordered to turn over to the committee, whereupon the judge ordered Nichols to show cause why he should not be adjudged in contempt of court. At the hearing on October 21 Nichols presented a general demurrer and motion to dismiss the petition of the committee, which demurrer and motion were overruled. This judgment is excepted to and assigned as error. When the demurrer was overruled Nichols filed his response which was signed by his attorneys and verified positively by him. Thereupon the State, represented by the solicitor-general, offered in evidence a transcript by the court reporter of testimony given by Moody Nichols upon a hearing before the committee on September 16, and also the transcript of testimony given by Moody Nichols and H. C. Collins given on the hearing before the committee on October 4. The respondent, Nichols, objected to this evidence on the ground that it was hearsay and was immaterial and irrelevant. These objections were overruled and the respondent excepted. After the evidence was closed the court passed an order adjudging the respondent in contempt, and ordered that he be confined in jail until he purged himself by producing the docket referred to in the petition of the committee. To this order the respondent excepted.

■ The first report to the court by the committee alleged that the respondent had been called before the grand jury at the August term of the court, and called on to produce his dockets of traffic cases, and that he presented a docket bound in red leather and testified that this was the only criminal docket on which he had entered these cases. At that time a copy of the docket was made showing entries of 163 cases. At the meeting of the committee on September 16 the respondent presented a criminal docket, an entirely different book from that which had been presented to the grand jury, and which contained many entries different from those

on the docket previously presented. This docket contained entries of 247 cases. The report further alleged the collection of illegal costs in many of the cases, and that the respondent refused to furnish any statement of the costs collected by him. The second report was filed by the committee setting forth in detail what had transpired at a meeting on September 16, including an examination of the respondent under oath in which the respondent had declined to give the committee the information asked for about the two dockets. On September 20 the judge passed an order requiring the respondent to produce and turn over to the committee the two dockets referred to in their report.

On October 4 the committee met again, and later reported to the court that the respondent had been present and had produced the same docket containing 247 cases which he had produced at the former hearing, and had failed to produce the docket which had been presented to the August term of the grand jury, and that he had refused to give any information with reference to what disposition he had made of this docket. The committee prayed for a rule nisi requiring the respondent to show cause why he should not be adjudged in contempt of court for failure to comply with the order formerly passed. On the hearing the respondent presented a demurrer to the petition on the ground that it set forth no cause of action and alleged no facts which in law formed the basis of an order for contempt. Certain evidence was introduced which need not be detailed. The respondent filed an answer in which he alleged that the committee was named for the purpose of investigating his actions as ordinary in handling traffic cases for the purpose of obtaining evidence on which to base a criminal prosecution against him; that he failed to produce the book which he had with him on the occasion of his appearance before the grand jury but that this book was not in any sense a docket; that on September 1, 1937, he obtained a book which he began using as a docket on which to enter cases brought before him for violation of the traffic laws; that this book was furnished him through the office of the county commissioner, and was paid for with county funds, and respondent began using the same; that in a short while it became apparent to him that it was necessary that he have some book for the keeping of personal memoranda for his own use, for the reason that some parties convicted of violating the traffic laws were not

able to pay all of their fines at one time and were given an opportunity to do so by instalments, and it was necessary to have some record of the payments made and those to be made; that other extraordinary conditions interposed from time to time convinced the respondent of the necessity of having some personal memoranda for his own use. As a consequence, on May 23, 1938, he obtained another book which is his docket of criminal cases, this book having been paid for by county funds; that at this time there had been brought before him only five criminal cases, and he immediately transferred those five cases to the docket he is now using, and since that time he has entered on said docket every single case that has been brought before him, and has made entries of the disposition of each case, and where funds have been collected the disbursement of the amount of such funds, all of which appears on said docket, each case entered thereon being a complete record of said case; that after acquiring this docket and transferring the five cases brought before May 23, 1938, he converted the other book into a personal memoranda book for his own personal use, and the same has not been used as a docket since that time and is not a docket now; that when he was asked to go before the grand jury he had no knowledge that his office or actions were under investigation, but was informed that the grand jury wanted some information concerning certain traffic cases, and for that reason he carried with him his memoranda book in order that he might advise them of any information that he had concerning any traffic cases; that the book carried before the grand jury at that time was not his official docket; and that his official docket has been submitted to the committee for investigation and it is hereby submitted to the court. The respondent further alleged that, by reason of the facts stated, his refusal to produce his private memoranda book before the committee and answer certain questions propounded to him on cross-examination was founded on the constitutional rights which the respondent had after he found that his acts as a public official were under investigation for the purpose of instituting criminal prosecutions against him, and he now invokes the provisions of the constitution of the State and all the laws pursuant thereto as his defense to the rule nisi in this case.

After hearing the evidence the court passed an order holding that the book called for by the committee was a public record, and find-

ing the respondent in contempt. The respondent excepted.

The Code, § 59-309, makes it the duty of the grand jury to inspect and examine the office, papers, books and records of the clerk of the superior court and ordinary. In the Code, § 59-310, the grand jury is authorized to appoint any one or more citizens to inspect and examine, during vacation, the offices, books, papers, records, accounts and vouchers of the ordinary or other authority having charge of county affairs, and all other county officers; and if any of said officers should be the custodians of county funds and have in their possession funds belonging to the county, they shall exhibit them to said committee, and it shall be the duty of the committee to count the same and to make a full and complete report of the finances, disbursements, and conditions of the several offices to the grand jury at the succeeding term of the superior court. The Code, § 59-311, provides that the person or persons, when so appointed to inspect and examine, shall have power to take full control of the offices, papers, books, records, accounts and vouchers of the several different offices, to compel the attendance of witnesses, hear evidence in regard to fraud, the nonperformance of official duty, and the improper disbursement of county funds. The Code, § 59-312, provides that if any such officers shall refuse to produce books, papers, records, accounts and vouchers, it shall be the duty of the judge of the superior court of the county, on evidence being adduced, to enforce the provisions of this and the two preceding sections by mandamus or attachment, as the case may require.

By the act of February 16, 1938 (Ga. L. 1937-1938, Ex. Sess., pp. 558, 560), the court of ordinary was given jurisdiction of misdemeanor cases arising under the Georgia State highway patrol act of 1937, and other traffic laws of the State, in all counties where there is no city or county court, provided the defendant waives a jury trial. The act requires that the court shall keep a docket showing the names and addresses of the defendants, the natures of the offenses, the dates brought before the court, and the final disposition of the cases with the dates thereon.

In the present case it is undisputed that there were two books which had been used by the ordinary as dockets of traffic cases. In his answer the respondent admits that both of these books were purchased and paid for by the county to be used by him as dockets, and as to the book which is being withheld from examination he

admits that it served as his docket from about September 1, 1937, to May 23, 1938, although he says there were only five cases entered on it, which cases he subsequently transferred to the other book. There was evidence to the effect that the first docket had 163 cases entered on it, but whether a book is in fact a docket does not depend on the number of cases entered on it. A blank book can not constitute a docket, but it becomes a docket when used as such officially. The judge was fully authorized to find that the book which he ordered turned over to the committee was a public record of the ordinary's office.

The order adjudging the respondent in contempt and holding the book involved "to be a public record and not a private record" was not unauthorized under the evidence. Dillingham, a member of the grand jury at the August term, 1940, testified that the ordinary, when called before that body, was asked by the witness, "if that was the only record of traffic cases that he had [referring to the book which he later refused to produce] and he said that it was the only record he had." It is inferable that in this docket the ordinary kept memoranda of his official acts. Therefore, whether or not it had therein private memoranda, or was denominated by him as a private docket, the court was authorized to find that it was a public docket and that the grand jury had a right to require its production for inspection as a public docket of the ordinary's official acts.

■ The defense that the book when produced might be used as incriminating evidence against the respondent can not be sustained. This contention falls within the principle of the decision in *Tolleson* v. *Greene*, 83 *Ga.* 499 (10 S. E. 120), where it is held that there is no privilege exempting a person from surrendering assets to a receiver in obedience to the legal order of a court commanding him to do so, though he be under prosecution or subject to prosecution for stealing or embezzling the same.

■ The demurrer to the petition of the committee was properly overruled. This petition alleged that an order of the judge of the superior court to turn over the book had been served personally on the respondent; that he had failed to produce the docket which had been presented to the August term of the grand jury, and had refused to give any information with reference to what disposition he had made of said docket. In the brief for the plaintiff in error

certain specific objections to the sufficiency of the petition are urged. In view of the law mentioned above the committee appointed by the grand jury is a proper party to invoke action by the judge of the superior court. However, this objection and those contending that the petition was not verified and that it had no process attached to it were not raised by the demurrer. The statute seems to contemplate, in enforcing its provisions, a summary proceeding before the judge, whose duty it is to act "upon evidence being adduced." A suit in usual form seems to be unnecessary.

■ If it were error to admit the transcripts of the proceedings before two sessions of the committee, the respondent having been present and having taken part therein, it could not alter the result, because it clearly appeared from the answer of the respondent that the book which was sought by the committee had been used by him as a docket and that he was still refusing to turn it over to the committee.

■ There has been filed in this court a special motion in behalf of the plaintiff in error in which it is alleged that he was indicted on the charge of stealing, embezzling, and withdrawing from the office of the court of ordinary a certain docket; it being charged in the indictment that the docket belonged to the court of ordinary, and that the book was the same docket involved in the present case; and that on the trial of the indictment the defense of the plaintiff in error was that the book was not a public record of the ordinary but was his private memoranda book; that on the trial of the indictment the judge submitted to the jury the question whether the book was a public record or a private memoranda book, and that the jury found the respondent not guilty. It is insisted that this verdict was an adjudication of the question whether the docket which the lower court ordered the plaintiff in error to produce was a public record or a private memoranda book, and on this ground it is urged that this court should reverse the judgment of the lower court in the contempt case and order that the plaintiff in error be discharged from the charge of contempt. No authority is cited in support of this contention and the same can not be sustained. No question of res judicata arises here, because the verdict was not an adjudication previous to the order finding the plaintiff in error in contempt. Besides, the issues in the two cases were not the same. In the contempt case the issue was whether the plaintiff in error

had disobeyed an order of the court to produce the book, and in the criminal case the issue was whether the plaintiff in error "did steal, embezzle, and withdraw the book from the office of the court of ordinary." While the book may have been the same, and the plaintiff may in both cases have urged that the book was not a public docket, it is quite possible for the docket still to be in the ordinary's office although withheld from the committee, in which case the plaintiff in error could simultaneously be guilty of the contempt yet not be guilty of stealing, embezzling, and withdrawing the book from his office. For this reason and because the verdict was subsequent to the order adjudging the respondent in contempt the motion can not be granted.

The plaintiff in error insists that since several terms of court have passed since the order excepted to in this case, all of the grand-jury committees have ceased to exist and there is no way by which the plaintiff in error could purge himself of contempt under the order. The motion does not contain this contention. But it will be noted that the order requires the plaintiff in error to deposit with the clerk of the superior court the criminal docket and warrants which had been called for by the grand jury committee, there to be safely kept subject to inspection by either party. Thus, the plaintiff in error can comply with the court's order by depositing the book and warrants with the clerk.

*Judgment affirmed. Sutton, J., concurs. Felton, J., dissents.*